### In re BUCHANAN (four cases).

(Circuit Court of Appeals, Second Circuit. December 15, 1914.)

Nos. 18, 22, 24, 148.

1. BANKRUPTCY ☞391—ACTIONS AGAINST BANKRUPT—PERMITTING PROSECUTION.

Where, prior to bankruptcy, suits were commenced by creditors in the state courts under Real Property Law N. Y. (Consol. Laws, c. 50) § 98, making the income from a trust in excess of that necessary for the beneficiary's support liable to the claims of creditors, it was not improper for the bankruptcy court to allow the suits to be prosecuted to judgment, as this would be a convenient way of liquidating the claims of the creditors, the amount of which was disputed; but the prosecution thereof beyond judgment should not be permitted.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 637–655; Dec. Dig. ☞391.]

2. BANKRUPTCY ☞391—ACTIONS AGAINST BANKRUPT—PERMITTING PROSECUTION.

Where, prior to bankruptcy, creditors had brought suits to recover the income of a trust fund beyond that necessary for the bankrupt's support under Real Property Law N. Y. § 98, and a majority of the creditors in number and amount voted against authorizing the trustee in bankruptcy to bring a similar action on the ground that they did not believe it could be maintained by him, orders allowing the prosecution of the creditors' suits on condition that the amount recovered after the payment of costs and expenses of the suits should be turned over to the trustee for distribution, and that the bankrupt estate in the event of nonsuccess should not be called upon to defray the costs and expenses, were proper and could not be complained of by creditors or the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 637–655; Dec. Dig. ☞391.]

3. BANKRUPTCY ☞391—ACTIONS AGAINST BANKRUPT—PERMITTING PROSECUTION.

It was not improper to include in one of such orders a provision that it should be without prejudice to any rights of the suing creditors under an assignment of the income from one of such trusts, as, if the assignment was void, invalid, or inoperative, as contended by the bankrupt, the provision was harmless, while, if the assignment gave those creditors

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

superior rights, it would be unfair to prejudice them by the order to which they assented for the convenience of all parties.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 637–655; Dec. Dig. ☜391.]

**4. BANKRUPTCY ☜408—DISCHARGE—GROUNDS FOR DENIAL.**

Under Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 550 [Comp. St. 1913, § 9598]) § 14, subd. b(1), providing for the discharge of a bankrupt unless he has committed an offense punishable by imprisonment as therein provided, where the state courts had held that under Real Property Law N. Y. § 98, making the income of trust funds beyond that necessary for the beneficiary's support liable to creditors, a trustee in bankruptcy could not recover such income, and, though the bankruptcy act was subsequently amended, there had been no decision passing upon the effect of the amendment, and a majority of the creditors in number and amount voted against authorizing the trustee to sue for such income on the ground that he could not maintain such an action, it was improper to deny a discharge on the ground that the bankrupt made a false oath and rendered a false account because he failed to set forth such income in his sworn schedules.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. ☜408.]

**5. BANKRUPTCY ☜408—DISCHARGE—GROUNDS FOR DENIAL.**

The failure of a bankrupt on demand to assign to the trustee in bankruptcy the income of a trust fund beyond that necessary for his support made liable to creditors by Real Property Law N. Y. § 98, was not ground for denying a discharge, since, if such surplus income passed to the trustee in bankruptcy, an assignment was unnecessary, while, if it did not pass, the bankrupt should not be coerced into assigning it by refusing a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. ☜408.]

Petitions to Revise and Appeal from Orders of the District Court of the United States for the Southern District of New York.

This cause comes here upon petitions to revise and an appeal to review various orders of the District Court, Southern District of New York, which will be enumerated in the opinion.

Roderick Robertson, of New York City, for petitioner.

A. P. McKinstry and Hugh Bayne, both of New York City, for respondents.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. Charles P. Buchanan, upon his voluntary petition, was adjudged a bankrupt on July 29, 1913. At the time of such adjudication, he was entitled to an income for life from trusts created by the wills of his father and mother. This income was in excess of $18,000 a year, and it is sought to sequestrate part of it under section 98 of Real Property Law of New York, which reads as follows:

"The surplus income of trust property liable to creditors. When a trust is created to receive the rents and profits of real property, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum necessary for the education and support of the beneficiary, shall be liable to the claims of his creditors in the same manner as other personal property, which cannot be reached by execution."

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] Prior to bankruptcy four suits were begun by creditors of Buchanan in the state courts to reach the alleged surplus of income. To recover in these suits it would be necessary to prove the amount of indebtedness, which is disputed, and also to prove that there was a surplus of income. Upon the initiation of the bankruptcy proceedings, an order of the District Court was entered, staying the further prosecution of these suits. Subsequently an order was made vacating such stay order. This vacating order is brought here on petition to revise. The question presented seems to be academic because these original suits are practically temporarily abandoned, and suits, brought with the assent of the trustee in bankruptcy, are being prosecuted instead. However, if this were not so, there would be no impropriety in the District Court allowing these original suits to be prosecuted to judgment; it would be a convenient way of liquidating the claims of the creditors, which claims have been filed in the Bankruptcy Court. Beyond judgment, however, they should not be prosecuted for the present, and a modification of the order sought to be revised to that extent will be made. As so modified it is affirmed.

[2] The next two orders, which are brought here on petition to revise, authorize the bringing of actions against the respective trustees of the two trust funds to reach the alleged surplus. In Butler v. Baudouine, 84 App. Div. 215, 82 N. Y. Supp. 773, it was held that a trustee in bankruptcy did not come within the class of persons who could avail themselves of the remedy conferred by section 98 supra. Subsequent to that decision section 47 of the Bankrupt Act was amended so as to vest a trustee in bankruptcy as to all property not in the bankruptcy court, with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied. Since that amendment was passed in 1910, there has been no adjudication in the state courts passing upon the effect of that amendment, or holding that the additional rights and powers conferred upon the trustee entitled him to the remedy provided by section 98. Conceiving that he is entitled to such remedy, the trustee in this case undertook to obtain the consent of the creditors to his bringing suit in the state courts. A majority of the creditors in number and amount voted against authorizing him to bring such action, upon the ground that they did not believe such action could be maintained. The trustee then entered into negotiations with the creditors who had brought suits in the state courts before bankruptcy and as a result of such negotiations the orders complained of were entered. They give leave to these creditors to institute and prosecute in the name and on behalf of the trustee in bankruptcy such action or actions as they may be advised are necessary and proper and as may be approved by the trustee to enforce the application of the surplus of the bankrupt's income under the two wills: (1) To the payment of the costs and expenses of such action or actions, including such counsel fee as may be allowed therein. (2) Any residue remaining to be turned over to the trustee in bankruptcy for distribution among the creditors whose claims have been duly proved and allowed or may be hereafter proved and allowed within such time as may be fixed by the court. (3) The bankrupt estate, in the event of nonsuccess not to be called upon

to defray in whole or in part costs and expenses. We think these orders are entirely proper; in view of the attitude of the majority of the creditors, it was a wise course for the trustee to take. Certainly no creditor can complain of his doing so; nor should the bankrupt, the trustee is entitled to his day in court to have the question determined whether he can take the surplus, if there be any, under the amendment of 1910.

[3] Further objection is made to one of these orders because it contains a provision that such order shall be without prejudice to any rights of the creditors, who brought suit before bankruptcy, under certain assignment. It seems that before bankruptcy Buchanan had assigned to them certain specified portions of his income from one of the testamentary trusts. The objection is without merit. If, as bankrupt contends, the assignment be void, invalid, or inoperative, the provision in the order becomes of no effect. If, however, the assignment did give these creditors rights superior to those of the trustee, it would be unfair to prejudice those rights by this order, to which these creditors assented for the convenience of all parties.

[4, 5] The really important question presented here—by appeal—is whether the court erred in denying bankrupt his discharge. The specification of objections sets forth these grounds of objection:

(1) Making a false oath and rendering a false account (section 14, subd. b (1) of the Bankruptcy Act) because he failed to set forth in his sworn schedules the income during his life derived from these trust funds.

(2) Concealing and failing to turn over to the trustee on demand, his interest or property right in and to the income from these trust funds.

As to the first of these objections, there is nothing as yet to show what the amount of the alleged surplus is, or indeed that there is any surplus. Moreover, as stated above, it is still an open question whether or not such surplus, if there be one, passed to the trustee. Presumably the bankrupt was advised by his counsel that it did not so pass, and a majority of the creditors in number and amount, also presumably advised by counsel, have reached the conclusion that the chance of an affirmative answer to the question was too uncertain to risk spending the funds of the estate in securing a judicial answer to it. Under these circumstances, it would be a very harsh construction of the Bankruptcy Act to refuse discharge because the bankrupt did not include this trust income in his schedules.

As to the second objection: If the surplus passes to the trustee, under the amendment, an assignment by the bankrupt to the trustee is wholly unnecessary. If, however, the amendment has not the effect contended for, and the bankrupt makes an assignment, he probably thereby seriously prejudices the rights which the law gives him. To coerce an assignment, under these circumstances, through refusal of discharge, seems to us grossly unfair and we find the objection wholly without merit.

Out of the income accrued under one of these trusts there is an accumulation of $3,460.38 due him at the date of adjudication. The writer is inclined to consider this as if it were money in bank, subject

to the bankrupt's draft, and that it should have been scheduled and turned over. The majority of the court, however, are satisfied that it is not distinguishable from the income generally; the will expressly providing that no part of the income shall be liable "prior to the actual receipt thereof by the beneficiary." From this conclusion I shall not dissent.

The order denying the discharge is reversed; on the application for discharge, there may be a new hearing.